IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHON J. VAUGHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-3043 |
| | ) | |
| CA TECHNOLOGIES, INC., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jonathon Vaughn ("Plaintiff") filed this civil rights action against CA, Inc.[1] ("Defendant") on April 28, 2014, alleging discriminatory termination in violation of the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. 621 *et seq.* Before the Court is Defendant's motion for summary judgment [26]. For the reasons stated below, Defendant's motion for summary judgment [26] is granted.

**I.    Background**

The Court takes the relevant facts from the parties' Local Rule ("L.R.") 56.1 statements[2]: Defendant's Statement of Facts ("Def. SOF") [29], Plaintiff's Response to Defendant's

---

[1] Defendant maintains that Plaintiff incorrectly named the company as CA Technologies in his complaint and that the correct name of the company is simply CA, Inc.

[2] L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g., Koszola v. Bd. of Educ. of the City of Chi.,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g., Malec,* 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec,* 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233

Statement of Facts ("Pl. Resp.") [43], Plaintiff's Statement of Additional Facts ("Pl. SOF") [32], and Defendant's Response to Plaintiff's Statement of Additional Facts ("Def. Resp.") [42].

Defendant produces and sells software products that help companies manage their businesses. Pl. Resp. ¶ 2. On May 7, 2013, Defendant's CEO Mike Gregoire announced that, as a result of its poor performance in fiscal year 2013, the company would lay off approximately 1,200 employees, and that 50% of the terminations would come from research and development. *Id.* ¶ 29. Defendant now refers to these layoffs as a "Reduction-in-force" ("RIF"). Def. SOF ¶ 29. Plaintiff, who was born on November 24, 1955, worked as a Senior Software Engineer in Mainframe North of the company. Pl. Resp. ¶¶ 1, 17. Mainframe North is part of Defendant's Research and Development group, which is in charge of many products including Easytrieve, a product which Plaintiff helped to develop and support and which remained Plaintiff's primary responsibility while he worked for Defendant. *Id.* ¶¶ 12, 13, 15.

Of the 170 employees in the Mainframe North division, 16 were selected for termination as part of the RIF. Def. SOF ¶ 67. Of the 46 Senior Software Engineers who worked in Mainframe North, five were selected for termination, including Plaintiff, who was 57 years old at the time. *Id.* ¶ 68. Of the 41 Senior Software Engineers who were retained, 5 were under 40, and the remaining 36 were over 40—including 14 who were Plaintiff's age or older. *Id.* ¶ 69. In his complaint, Plaintiff alleges that the average age of employees laid off in Mainframe North as part of the RIF was 60.625, whereas the average age of those retained was 30.283, but Plaintiff now admits that those calculations were incorrect. Compare [1] at ¶ 12 with Pl. Resp. ¶ 71. In

---

F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement – that is, it is improper for a party to smuggle new facts into its response to a party's L.R. 56.1 statement of fact. See, *e.g.*, *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

fact, the average age of the Mainframe North employees selected for termination as part of the RIF was 60.625, whereas the average age of the employees retained was 50.59. Pl. Resp. ¶ 71. The average age of the Senior Software Engineers from Mainframe North that were selected for the RIF was 61.8, whereas the average age of the Senior Software Engineers that were retained from Mainframe North was 52.1. *Id*. On April 28, 2014, Plaintiff filed his one-count complaint against Defendant for age discrimination in violation of the Age Discrimination in Employment Act of 1967 as amended ("ADEA"), 29 U.S.C. 621 *et seq*. On June 1, 2015, Defendant filed a motion for summary judgment on Plaintiff's ADEA claim.

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Although intent and credibility are often critical issues in employment discrimination cases, no special summary judgment standard applies to such cases." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013). Rather as with any case, the Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citation omitted).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is

proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir.2011) (quoting *Celotex Corp.,* 477 U.S. at 322 (1986)). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III.    Analysis**

The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). While age need not be the sole factor motivating the employer's decision, the plaintiff must establish that age was the *determinative* factor. See *Gross v. FBL Fin. Servs. Inc.,* 557 U.S. 167, 180 (2009) (holding that under the ADEA's language prohibiting discrimination "because of" age, plaintiff must prove that age was "the 'but-for' cause" of the adverse employment action); *Lindsey v. Walgreen Co.,* 615 F.3d 873, 876 (7th Cir. 2010) (same). Persons over the age of 40 are a protected class under the ADEA. 29 U.S.C. § 631.

A plaintiff may prove age discrimination using either the direct or the indirect method of proof. *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060 (7th Cir. 2003). Under either method, the plaintiff must demonstrate that the employer would not have made the adverse employment decision in question but for the plaintiff's membership in the protected class. *Id.* at 1061. See

also *Harris v. Bath & Body Works, LLC*, 2015 WL 8778145, at *3 (N.D. Ill. Dec. 15, 2015). Defendant argues that it is entitled to summary judgment because the Plaintiff cannot "set forth specific facts showing that there is a genuine issue for trial" under either the direct or the indirect method. *Anderson*, 477 U.S. at 250. The Court analyzes Plaintiff's ADEA claim under each method.

### A. Direct Method

To proceed under the direct method of proof, a plaintiff must show, by way of direct or circumstantial evidence, that his employer's decision to take an adverse job action against her was motivated by an impermissible purpose. *Cerutti,* 349 F.3d at 1060. Direct evidence, if believed by the trier of fact, "prove[s] discriminatory conduct * * * without reliance on inference or presumption." *Id.* "'[D]irect' proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion (*e.g.,* 'You're too old to work here.'), but also includes circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490-91 (7th Cir. 2007). Circumstantial evidence of discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment and (3) evidence where the employee was qualified for and fails to receive the desired treatment, and the employer's stated reason for the difference is unworthy of belief." *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529-30, n. 4 (7th Cir. 2008). While a plaintiff "can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker,'" *Darchak v. City of Chi.*

5

*Bd. of Educ.,* 580 F.3d 622, 631 (7th Cir. 2009) (citation omitted), plaintiff's mere suspicion that his age may have been a factor in the way he was treated is not enough. Although the Court must draw inferences in Plaintiff's favor as the nonmoving party, the Court may not "draw[] inferences that are supported by only speculation or conjecture." *Brown v. Advocate S. Suburban Hosp.,* 700 F.3d 1101, 1104 (7th Cir. 2012).

To be actionable under the direct method, a decisionmaker's discriminatory remarks must be both contemporaneous to the adverse employment action and refer to that adverse action. See *Fleishman v. Cont'l Cas. Co.,* 698 F.3d 598, 605 (7th Cir. 2012); *Mach v. Will Cnty. Sheriff,* 580 F.3d 495, 499 (7th Cir. 2009); *Hemsworth,* 476 F.3d at 491. Here, there is no direct evidence of that kind. Kirk Willis testified that the decision to terminate Plaintiff was made with Willis's supervisor Osvaldo Ridner. Def. SOF ¶ 31. Willis went on to testify that there was no reason to consider age and neither Plaintiff's age or the age of anyone else in the Easytrieve group was considered. *Id.* ¶ 62. Plaintiff testified that prior to his termination he never felt he had been subjected to age discrimination nor had he heard any ageist comments in the workplace. *Id.* ¶ 79. Thus, Plaintiff lacks direct evidence in the form of "an admission by the decisionmaker that the adverse employment action was motivated by discriminatory animus." *Darchak,* 580 F.3d at 631.

As for circumstantial evidence under the direct method, Plaintiff relies solely on statistical calculations to bolster his claim that there is direct evidence of age discrimination. See Def. SOF ¶ 79 (Plaintiff's testimony that his calculations "kind of told me maybe I got discriminated against"). "Although statistical evidence can be relevant to prove a pattern or practice of discrimination, it is not usually sufficient in itself." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 319 (7th Cir. 2003). Plaintiff's statistics were

calculated as follows. First, Plaintiff determined the average ages of the 16 employees who were terminated in Mainframe North and determined that the average age of those terminated was 60.625. See Def. SOF ¶¶ 70-71, 78-79; Pl. Resp. ¶ 70. Then, Plaintiff calculated the average age of the 154 employees who were retained and came up with 30.283. Pl. Resp. ¶ 70. Plaintiff now admits that his calculations were incorrect: the average age of the Mainframe North employees selected for termination as part of the RIF was 60.625, whereas the average age of the employees retained was 50.59. *Id*. ¶ 71. Thus, the general statistics do not suggest a practice of discrimination against employees over the age of 40.

For the sake of completeness, even if the Court accepted Plaintiff's earlier calculations as accurate, Plaintiff still would not have met his burden using the direct method because the statistical evidence that he offers does not meet the criteria required at summary judgment. General statistics without context "hardly compel" a conclusion of invidious discrimination. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). While plaintiffs in RIF cases "bear no heavier a burden of proof than other ADEA plaintiffs," *Taylor v. Canteen,* 69 F.3d 773, 779 (7th Cir. 1995), Plaintiff needs to muster statistics that involve employees that are comparable in light of their experience, performance, and qualifications. See *Radue*, 219 F.3d at 616. The Supreme Court has emphasized the importance of looking to the proper base "group" when making statistical comparisons and examining all of the surrounding facts and circumstances which create the statistics themselves. *See Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 308, (1977) (citation omitted). In another RIF case, the Seventh Circuit reasoned that "[i]n order to be considered, the statistics must look at the same part of the company where the plaintiff worked; include only other employees who were similarly situated with respect to performance, qualifications, and conduct; the plaintiff and the other similarly situated employees

7

must have shared a common supervisor; and treatment of the other employees must have occurred during the same RIF as when the plaintiff was discharged." *Balderston*, 328 F.3d at 320 (citing *Radue*, 219 F.3d at 617-18).

16 individuals in various positions in Mainframe North were terminated and 154 individuals in Mainframe North were retained. Def. SOF ¶ 67. The Court agrees with the Defendant that the relevant group are the Senior Software Engineers, Plaintiff's position at the company, because they are readily comparable with respect to performance, qualifications, and conduct. Plaintiff was one of five Senior Software Engineers who were terminated; 41 Senior Software Engineers were retained. *Id.* ¶ 68-69. See also Pl. Resp. ¶ 12. Of those 41 Senior Software Engineers, five were under 40 and 36 were over 40. Def. SOF ¶ 69; Pl. Resp. ¶ 69. Plaintiff who was 57 years old at the time of the RIF, was younger than or the same age as 14 of the 36 Senior Software Engineers who were retained, including the oldest engineer (age 70) and two individuals on the Easywise team (ages 62 and 64, respectively). See Def. SOF ¶ 69; Pl. Resp. ¶ 69. The average age of the software engineers who were retained was 52.1; the average age of the software engineers who were terminated was 61.8. Pl. Resp. ¶ 71.

Because Plaintiff's "proposed statistical evidence lacks the necessary context needed for a meaningful comparison," the Court cannot credit it. *Hemsworth*, 476 F.3d at 492. The statistical evidence that Plaintiff has assembled is too inaccurate, incomplete, and attenuated for a reasonable factfinder to conclude that Defendant terminated the Plaintiff on account of his age. See *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1140 (7th Cir. 1998). Neither the general statistics of the average ages of the employees in Mainframe North nor the average ages of the other Senior Software Engineers give rise to an inference of age discrimination. Accordingly,

Plaintiff has not demonstrated the existence of a genuine issue of material fact under the direct method for his case to proceed to trial.

B. **Indirect Method**

Under the indirect method of proof, Plaintiff must show that "(1) he was a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other similarly situated employees who were not members of his protected class or were substantially younger were treated more favorably." *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 475 (7th Cir. 2008) (citation omitted). See also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (laying out the indirect method). If Plaintiff establishes a prima facie case of discrimination, then the Defendant must present evidence demonstrating a legitimate, nondiscriminatory reason for not hiring the plaintiff for its actions. *Id.* at 475-76 (citation omitted). Plaintiff easily satisfies two prongs of the prima facie case: he was 57 at the time that Defendant terminated him. The other two prongs require more discussion to determine whether Plaintiff makes a prima facie case of age discrimination.

First, the Court considers whether Plaintiff met the legitimate expectations of his employer. Plaintiff received an "Achieved Expectations" rating on his FY2012 and FY2013 performance evaluations, but Defendant insists that these reviews were not considered by Mr. Willis or Mr. Ridner—the individuals who jointly determined that Plaintiff would be terminated as part of the RIF. Here, though, there is a dispute as to the extent to which Plaintiff's job performance factored into the decision to terminate him. Willis testified that he was more critical of Plaintiff's performance than the individuals who reviewed Plaintiff for those earlier fiscal years. In Willis's view, Plaintiff was "mediocre at best," pointing to the fact that Plaintiff did not meet expectations on at least two projects that were deemed "critical" to Defendant's

business, causing both projects to be reassigned to another Senior Software Engineer. Def. SOF ¶¶ 40, 60. Plaintiff testified that Willis told Plaintiff that his termination was not on account of his job performance, but solely for financial reasons. Pl. Resp. ¶ 40. Defendant points out that "making *some* contribution isn't the same as making the *expected* contribution." [43] at 5 (quoting *Martino v. MCI Comm. Servs. Inc.*, 574 F.3d 447, 454 (7th Cir. 2009) (emphasis in original). While the Seventh Circuit has "repeatedly stressed that we do not sit as a superpersonnel department where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices," *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (quotation marks and citations omitted), the fact that Plaintiff can point to contemporaneous job evaluation records that he was meeting an employer's expectations, despite Willis's testimony that he wasn't, suggests that reasonable minds could differ as to whether he was meeting his employer's legitimate expectations. Therefore, Plaintiff has made at least a *prima facie* case that he was meeting the legitimate expectations of his employer.

The final prong of the prima face case—whether two employees are "similarly situated"—is "a common sense inquiry that depends on the employment context." *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008). In a RIF case like this one, "the fourth factor is altered slightly because the employer decides whom from a defined group it will 're-hire' or retain, considering all existing employees as roughly like applicants for retention." *Balderston*, 328 F.3d at 321. "The employer must then produce evidence that having decided in good faith that he should reduce the size of his workforce, [the employer] included the plaintiff within the class of workers to be laid off for reasons unrelated to any discriminatory considerations." *Id.* (quotation marks and citation omitted). Notably, unlike in the Title VII

context, an ADEA plaintiff who shows that someone "substantially younger" was retained instead of the plaintiff need not prove that the replacement is outside the protected class. Instead, "the fact that a plaintiff is replaced by someone 'substantially younger' is a reliable indicator of age discrimination," which the Seventh Circuit has identified as "generally ten years younger." *Id.* (quotation marks and citation omitted).

When looking for a similarly situated employee, Plaintiff "need not present a doppelganger who differs only by having remained in the employer's good graces." *Filar*, 526 F.3d at 1061. Nevertheless, "the comparator must still be similar enough to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, so as to isolate the critical independent variable: complaints about discrimination." *Id.* (quotation marks and citation omitted). Here, Plaintiff identifies two employees whom he contends were similarly situated to him, but not terminated as part of the RIF: Michael Arseneau and Scott Hoffman. As for Mr. Arseneau, who is 43, Plaintiff maintains that Mr. Arseneau was engaged in Level Two technical support on issues raised by clients that Level One could not resolve quickly over the phone. Plaintiff admits that Arseneau played a different role in the company "as a support staff member" whereas Plaintiff was a "developer." Pl. SOF ¶ 32. Thus, the Court concludes Arseneau is not similarly situated to Plaintiff.

The second co-worker Plaintiff offers as similarly situated is Scott Hoffman, who was 25 at the time of the RIF and was not terminated. However, Mr. Hoffman had been promoted to the position of Software Engineer, which Plaintiff concedes is a more junior position with different job responsibilities than Plaintiff's position as Senior Software Engineer. Pl. Resp. ¶ 19.[3] Plaintiff contends that this case may be considered a "mini-RIF" in the sense that Plaintiff's

---

[3] The obvious comparators were the other Senior Software Engineers on Plaintiff's team, Mr. Bruce and Mr. Childs, but both developers were too close in age to the Plaintiff, ages 62 and 54 respectively, to be substantially younger within the meaning of the ADEA.

duties "must have been subsumed by Mr. Hoffman," but nothing in the record supports such speculation. In fact, Plaintiff admits that while he was responsible for initially training Mr. Hoffman, Hoffman was not fully trained at the time of Plaintiff's termination. Pl. Resp. ¶ 76. Plaintiff claims that Defendant used an Associates Program to target the hiring of recent graduates to replace senior engineers nearing retirement, Pl. SOF ¶ 10, but he points to nothing in the record to substantiate such speculation. See [43] at 7, n.4 (pointing out that "[p]laintiff sought no information about such a program during discovery and his attorney asked no questions about the alleged program when he deposed Mr. Willis"). Indeed, Plaintiff admits that he never saw any job postings for an Associate Software Engineer stating that the applicant must be a recent graduate. Pl. Resp. ¶ 77. Plaintiff's ADEA claim fails under the indirect method because he cannot satisfy the fourth and final element of a *prima facie* case—he cannot prove that people who were substantially younger were systematically treated more favorably. See *Stockwell v. City of Harvey,* 597 F.3d 895, 901 (7th Cir. 2010).

Moreover, even if the Court were to overlook Plaintiff's failure to meet all the required elements of the *prima facie* case, Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's termination—namely, the company's poor performance in fiscal year 2013. See *Hemsworth*, 476 F.3d at 492 (7th Cir. 2007). Summary judgment would be inappropriate if Plaintiff can show that Defendant's reasons for including him in the RIF were pretextual. See *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1014 (7th Cir. 2000). Plaintiff needs to show some evidence to show that this reduction in force was, in fact, a pretext for discrimination. To make such a showing, Plaintiff "must present evidence suggesting that the employer is dissembling." *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) (citation and quotation marks omitted). "[T]he only question" for the Court "is whether the employer's proffered reason

was pretextual, meaning that it was a lie." *Id.* (citation and quotation marks omitted). Plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in Defendant's asserted reasons "that a reasonable person could find [it] unworthy of credence." *Id.* (quoting *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 792 (7th Cir. 2007).

The Court must decide whether there are facts in the record suggesting that Defendant did not honestly believe its reasons for terminating Plaintiff. See *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1014-15 (7th Cir. 2000). See also *Forrester v. Rauland–Borg Corp.,* 453 F.3d 416, 418 (7th Cir. 2006). The basic methodology of Defendant in conducting the RIF is discernable from the record. Decisionmaking responsibility was vested in Kirk Willis and Osvalado Ridner. Willis related in his testimony that, in in determining whom to lay off from Plaintiff's team, "[t]here's a lot of things that come into play * * * * [T]here's no formula, firm formula to apply." [27], Exh. B at 44-45. Willis mentioned several factors including "potential of growth and expanding knowledge of a particular individual," "past performance," and "ability of the individual to mentor others." *Id.* at 45. Certainly, more objective criteria may have been possible, but "any lack of precision in the articulated standards does not mean that [Plaintiff's] inclusion in the RIF was necessarily a pretext for age discrimination." *Paluck*, 221 F.3d at 1014 (citation and quotation marks omitted). Willis's testimony is consistent with Defendant's communications to supervisors about what to say to the soon-to-be laid-off employees at the termination meetings. Def. SOF ¶ 63 (citing Exhs. A, Q).

Furthermore, Plaintiff received a disclosure from Defendant upon his termination stating that "Employees were selected for inclusion in the Reorganization based on an assessment of one or more of the following: the current and future business needs and organization of CA; the budget of CA; and an assessment of the employee's position, functions, skill set and

performance." *Id.* ¶ 63, (citing Exh. A). Willis testified that Easytrieve, the product that Plaintiff was, in part, responsible for, was in "maintenance mode," the product was not a priority for Defendant, and that developers who worked on Easytrieve would not have skills that were portable to another product. *Id.* ¶¶ 34, 36, 37. As a result, the team working on that product could absorb losing a Senior Software Engineer. *Id.* ¶ 37. Plaintiff has not rebutted the explanation that his termination was in the context of Defendant's decision to lay off roughly 1,200 employees, 50% of whom would come from the part of the company in which Plaintiff worked. In the business context of a RIF, "it is not pretextual to terminate an individual perceived to be a weak performer in an organization even if that individual's performance could also be characterized as satisfactory or adequate." *Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 694 (7th Cir. 2006). No evidence in the record suggests that at the time of the RIF, Willis and Ridner did not honestly believe that Defendant needed to cut staff, that Plaintiff's team could not absorb the loss of a Senior Software Engineer, and that Plaintiff was the weakest of the Senior Software Engineers working on Easytrieve. In short, Plaintiff has not shown pretext.

The Court recognizes that Plaintiff may not have been fired absent the company's fiscal woes. However, this conclusion does not get the Plaintiff past summary judgment. As the Seventh Circuit has pointed out repeatedly, "[i]n a reduction in force, someone has to go." *Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 573 (7th Cir. 1998). See also *Hemsworth*, 476 F.3d at 492. Often in a RIF, it is one of the less productive employees. Plaintiff's performance "made him the most eligible candidate for termination" of his team when Willis compared him to other employees. *Fairchild*, 147 F.3d at 573. That Defendant may not have fired Plaintiff "absent the financial pressure does not establish that his reason for terminating Fairchild was pretextual." *Id.*

To sum up, Plaintiff does not a raise a disputed, material fact. For the direct method, Plaintiff cannot point to any admission by a decisionmaker that suggests discriminatory animus. The statistics that he has marshalled are inaccurate; the correct statistics are too general to serve as circumstantial evidence of discrimination. As for the indirect method, although Plaintiff is over 40, was subject to an adverse employment action when Defendant terminated him, and at least raised a triable issue of facts as to whether he met Defendant's legitimate expectations, Plaintiff offers no evidence that Defendant treated similarly situated employees differently. Nor can Plaintiff rebut the Defendant's legitimate explanation for his termination: a non-pretextual layoff as part of Defendant's RIF. For these reasons, the Court concludes that Plaintiff's ADEA claim cannot get past summary judgment and thus grants Defendant's summary judgment motion.

**IV.     Conclusion**

For the reasons stated above, the Defendant's motion for summary judgment [104] is granted.

Dated: February 16, 2016

Robert M. Dow, Jr.
United States District Judge